UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO EQUIPMENT FINANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 2438 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PMRC SERVICES, LLC, and PARKSIDE MAGNETIC RESONANCE CENTER, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In early 2006, Defendant PMRC Services, LLC ("PMRC") and non-party Toshiba entities entered into a contractual relationship under which PMRC leased certain medical equipment from Toshiba, Toshiba agreed to advance PMRC up to $1,311,947.94 to pay for the equipment, and PMRC agreed to repay the advance with sixty monthly payments of $22,269.15. At or about the same time, Defendant Parkside Magnetic Resonance Center, Ltd. ("Parkside") and Toshiba entered into an Unconditional Guaranty under which Parkside guaranteed PMRC's debts to Toshiba. The Unconditional Guaranty included a broad waiver in which Parkside agreed that Toshiba could "renew, extend (including extensions beyond the original term of the respective item of paper), modify (including changes in interest or lease rates), release or discharge any obligations of Guarantor [Parkside] … [and] of Debtor [PMRC]," and could "modify, amend, supplement or restate any Transaction Document," "without the consent of, or notice to, [Parkside] and without affecting or impairing the obligation of [Parkside]." Doc. 1-2 at 54.

Parkside was not given notice when PMRC and Toshiba amended their agreement to slightly increase the amount Toshiba agreed to advance and also to modify the size of the monthly payments and the payment schedule. In the meantime, Toshiba assigned to Plaintiff Wells Fargo Equipment Finance, Inc. its rights, title and interest in the agreement. When PMRC failed to make the required payments, thus defaulting, Wells Fargo sued PMRC and Parkside for breach of contract, breach of guaranty (as to Parkside only), and unjust enrichment.

The complaint was filed on April 20, 2010. PMRC and Parkside, which shared a registered agent, were served on April 27, 2010, giving them until May 18, 2010, to answer or otherwise plead. Defendants failed to do so, and a default was entered on May 27, 2010. When Defendants did not appear for a previously scheduled status hearing on June 1, 2010, the court set a prove-up hearing for July 15, 2010. Wells Fargo filed its motion for default judgment, setting forth the precise amounts owed, on July 9, 2010. On July 15, 2010, an attorney appeared in the courtroom at what was to be the prove-up hearing and sought leave to file his appearance for PMRC and Parkside; the court granted leave and re-set the prove-up hearing for August 17, 2010. It took an additional three weeks for counsel to actually file an appearance for PMRC; a week after that, counsel filed an appearance for Parkside and moved to withdraw his appearance for PMRC. On August 16, 2010, the day before the scheduled prove-up hearing, Parkside filed an answer without requesting leave. The court struck the prove-up hearing, allowed counsel to withdraw his appearance for PMRC, and set a briefing schedule for Parkside's forthcoming motion to vacate the default.

Parkside filed its motion—which includes just over a page of argument—on August 24, 2010. Wells Fargo timely filed a comprehensive response, arguing that Parkside did not have "good cause" for the default, did not offer a "meritorious defense," and did not show "quick

action" to correct the default. Parkside did not reply within the time allowed by the briefing schedule or at any time thereafter.

A court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The party seeking to vacate a default must show: (1) "good cause" for the default; (2) "quick action" to correct the default; and (3) a "meritorious defense" to the plaintiff's claim. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009). Failure to make any of the three showings warrants denial of a motion to vacate. *See Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46-47 (7th Cir. 1994). Analysis is guided by the "policy [of] favoring trial on the merits over a default judgment." *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007). The court gives that policy its due, but nonetheless finds that Parkside has failed to satisfy the quick action and meritorious defense requirements.

Parkside asserts that it did not realize until "the beginning of June 2010" that it had been sued and defaulted. Doc. 21 at 2. Even accepting that assertion, Parkside cannot be said to have taken "quick action" to correct the default. About ten weeks elapsed between the beginning of June 2010 and the middle of August 2010, when Parkside filed a tardy answer without leave and indicated that it would move to vacate the default. Parkside attributes one month of the delay, from early June to early July, to its search for an attorney. Difficulty finding an attorney, however, is not a valid excuse for the delay. "[A] foreign defendant's difficulty obtaining local representation does not constitute 'good cause' to vacate a default judgment." *Tygris Asset Fin., Inc. v. Szollas*, 2010 WL 2610652, at *3 (N.D. Ill. June 21, 2010); *see also Inquote Corp. v. Cole*, 2002 WL 483417, at *2 (N.D. Ill. Mar. 29, 2002); *Khetarpal v. Malini*, 2002 WL 206004, at *2 (N.D. Ill. Feb. 7, 2002). The same goes double for a local defendant like Parkside. And Parkside offers no explanation whatsoever for the delay from early July, when it retained

counsel, until the middle of August. Parkside's lackadaisical approach to rectifying the default renders it unable to satisfy the "quick action" requirement. *See*, *e.g.*, *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109, 112 (1st Cir. 1990) (affirming denial of motion to vacate default where defendant filed motion approximately three and one-half months after discovering entry of default); *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (same where two and one-half month delay in moving to vacate entry of default); *Leadership Council for Metro. Open Cmtys., Inc. v. Quality Realty Inc.*, 1999 WL 1046431, at *2 (N.D. Ill. Nov. 10, 1999) (denying motion where three month delay in moving to vacate entry of default and two month delay in moving to vacate default judgment); *see also Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (affirming denial of Rule 60(b) motion to vacate default judgment where motion filed five weeks after default judgment entered); *Sullivan v. Gen. Plumbing, Inc.*, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007) (denying Rule 60(b) motion to vacate default judgment where motion filed three weeks after default judgment entered).

Nor has Parkside satisfied the "meritorious defense" requirement. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default … and which is supported by a developed legal and factual basis." *Jones*, 39 F.3d at 165. Parkside's motion to vacate articulates its defense to breach of guaranty as follows: "[Parkside] is the guarantor of the debt and [Wells Fargo] changed the risk and nature of the guarantee without [Parkside's] consent or approval." Doc. 21 at 2. Parkside's answer provides some further detail: "[Wells Fargo] changed the amount of risk and the nature of any guaranty by … PMRC … by increasing the amount of the guaranty and extending the time period of the

guaranty without having [Parkside] guaranty the changes to the original signed agreement of the parties. As such, [Parkside] was released from any putative guaranty of the obligations of PMRC … ." Doc. 19 at 3-4.

These are not the ingredients of a meritorious defense. "Although usually the obligations of a third-party guarantor are discharged when parties to a contract unilaterally effect a material change in their own relationship that also affects the potential liability of the guarantor, a guarantor is free to give prior consent to such modifications." *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 886 (7th Cir. 2005) (Illinois law). That is precisely what Parkside did here. As noted above, Parkside agreed in the Unconditional Guaranty that Toshiba could "renew, extend (including extensions beyond the original term of the respective item of paper), modify (including changes in interest or lease rates), release or discharge any obligations of" PMRC "without the consent of, or notice to, [Parkside] and without affecting or impairing the obligation of [Parkside]." Parkside thus waived what otherwise would have been its right to notice of, and object to, the amendments made to PMRC's agreement. *See id*. at 886-87 (finding waiver of notice and consent where guarantor "waived notice of 'any change, alteration, or extension' in the underlying bond") (Illinois law); *United States v. Stump Home Specialties Mfg. Inc.*, 905 F.2d 1117, 1119-20 (7th Cir. 1990) (same under Indiana law, which appears on all fours with Illinois law in this respect); *see also FDIC v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997). "Parties to … a guaranty contract are entitled to enforce its terms to the letter—including holding a party to its waiver of the consent to material alterations that may increase liability." *Cincinnati Ins.*, 403 F.3d at 886. That is precisely what Well Fargo has done and is entitled to do here. Parkside has raised no "serious question" to the contrary. *Jones*, 39 F.3d at 165.

For these reasons, Parkside's motion to vacate the entry of default is denied. A prove-up hearing will follow in due course.

February 11, 2011

_____
United States District Judge